IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| DEMETRIUS B.,[1] | Case No. 3:23-cv-00114 |
| Plaintiff, | District Judge Michael J. Newman |
| vs. | Magistrate Judge Caroline H. Gentry |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

# REPORT AND RECOMMENDATIONS[2]

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in March 2021. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, it is

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

recommended that the Court REVERSE the Commissioner's decision and REMAND for further proceedings.

I.  **BACKGROUND**

Plaintiff asserts that he has been under a disability since June 22, 2020. At that time, he was thirty-three years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 34-54), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II.  **STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since June 22, 2020, the alleged onset date. |
| Step 2: | | He has the severe impairments of cervical spinal stenosis, lumbar degenerative disc disease, asthma, chronic fatigue syndrome, and essential hypertension. |

| | |
|---|---|
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR § 404.1567(b), subject to the following limitations: [H]e can occasionally reach overhead to the right. For all other directions, he can reach frequently to the right. He can frequently handle and finger with the right hand. He can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. He can never work at unprotected heights or moving mechanical parts, and never operate a motor vehicle. |
| | He is unable to perform any of his past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC there are jobs that exist in significant numbers in the national economy that he can perform. |

(Decision, Doc. No. 7-2 at PageID 40-48.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 48-49.)

**B.      The ALJ's Symptom Severity Analysis**

The ALJ summarized Plaintiff's symptoms, subjective complaints, and reports of difficulty with daily activities that he testified to at the June 2022 hearing. (Decision, Doc. No. 7-2 at PageID 42-43.) Next, the ALJ summarized the medical records and acknowledged the subjective complaints that Plaintiff reported to his medical providers. (*Id.* at PageID 43-45.) The ALJ concluded that although Plaintiff's physical and mental impairments could reasonably be expected to cause his symptoms, his statements about "the intensity, persistence and limiting effects of these symptoms are not entirely

5

consistent with the medical evidence and other evidence in the record." (*Id*. at PageID 43.)

The ALJ reasoned that Plaintiff's allegations were "not fully consistent with the objective evidence" because "[t]he treatment records show [Plaintiff] failed to follow treatment recommendations." (Decision, Doc. No. 7-2 at PageID 45.) The ALJ explained:

> [Plaintiff] alleges serious problems with his cervical spine. However, despite being told he needed surgery, he has not gotten this. [Plaintiff] called in July 2021 to reschedule his surgery. Previously he left the hospital against medical advice. (Ex. 4F/5). In March 2021, doctors noted [Plaintiff] was supposed to be monitoring his blood pressure, but that he was not taking the prescribed medications. (Ex. 6F/3). In August 2021, [Plaintiff] reported that he had not picked up his blood pressure from the pharmacy. Doctors stressed the importance of picking up and taking his medication to improve blood pressure. As for his back pain, [Plaintiff] had been referred for injections, which he declined. (Ex. 5F/12). This demonstrates a possible unwillingness to do that which is necessary to improve his condition. It may also be an indication that [Plaintiff's] symptoms are not as severe as purported.

(*Id.*)

The ALJ also explained his decision to limit Plaintiff to the reduced range of light work in the RFC:

> In conclusion, as to [Plaintiff's] functional limitations, [Plaintiff's] impairments do cause some limitations. From a physical standpoint, [Plaintiff's] treatment notes, minimal objective findings, physical examinations, and activities of daily living support finding [Plaintiff] capable of performing a reduced range of light exertional level work.
>
> Accordingly, based on the entire record, including the testimony of [Plaintiff], I conclude that the evidence fails to support [Plaintiff's] assertions of total disability. Despite the evidence demonstrating that [Plaintiff] has suffered from medically determinable "severe" impairments, the evidence also establishes [Plaintiff] retains the capacity to function adequately to perform many basic activities associated with work. The above residual functional capacity assessment is supported by the objective

medical evidence contained in the record. Treatment notes in the record do not sustain [Plaintiff's] allegations of disabling limitations. Further, the objective medical evidence is not consistent with [Plaintiff's] allegations. In sum, [Plaintiff] does experience some limitations, but only to the extent described in the residual functional capacity above.

(Decision, Doc. No. 7-2 at PageID 46.)

IV. **LAW AND ANALYSIS**

Plaintiff asserts that the ALJ reversibly erred by "failing to properly consider possible reasons why [Plaintiff] may not have complied with prescribed treatment, as required by [Social Security Ruling] 16-3p." (SSE, Doc. No. 8 at PageID 579, 583-87.) Concluding that this assertion is well-taken, the undersigned recommends that the ALJ's decision be reversed and remanded.

A. **Applicable Law.**

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 404.1529) and Social Security Ruling (SSR) 16-3p, which mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[4]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established

---

[4] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The ALJ must decide whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8.  The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that these statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

8

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

The ALJ will also consider whether the individual sought medical treatment and followed the treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. Similarly, "if the individual fails to follow prescribed treatment that might improve

9

symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*.

However, the ALJ "will not find an individual's symptoms inconsistent . . . on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p at *9. The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "*will* explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added); *cf. Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016) (the ALJ must consider the reasons for not obtaining treatment "before drawing an adverse inference from the claimant's lack of medical treatment.").

    **B.**    **The ALJ Reversibly Erred When Evaluating Plaintiff's Symptom Severity.**

The ALJ's analysis of Plaintiff's symptom severity does not comply with the applicable rules and regulations. Specifically, the ALJ erred when analyzing Plaintiff's treatment history and failing to consider possible reasons why Plaintiff did not seek treatment at a level consistent with the degree of his complaints. Because the ALJ did not comply with the requirements of SSR 16-3p, remand is warranted.

The ALJ relied on Plaintiff's treatment history–specifically, Plaintiff's "fail[ure] to follow treatment recommendations–to discount the severity of his claimed symptoms. But the ALJ's decision did not comply with the Social Security Administration's requirement that an ALJ consider *why* a claimant's treatment history is inconsistent with her complaints when evaluating symptom severity:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. ***We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.*** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. . . . ***We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.***

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis added). SSR 16-3p requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). An individual's inability to afford treatment is a possible reason an ALJ should consider when evaluating a lack of treatment. SSR 16-3p at *10.

The ALJ failed to comply with SSR 16-3p because he did not consider possible reasons why Plaintiff failed to seek treatment consistent with the degree of his

11

complaints. For example, Plaintiff testified at the June 2022 hearing that he was initially unable to undergo cervical spine surgery because he was hospitalized overnight for high blood pressure and a possible stroke, and so his surgery had to be rescheduled. (AR, Doc. No. 7-2 at PageID 69.) He said that he was subsequently unable to reschedule the surgery due to several issues which included contracting COVID-19, his mother's health issues, and the death of his son's mother. (*Id.*) Plaintiff also testified that he would not have had any childcare for his son during his surgery. (*Id.* at PageID 71.) Additionally, Plaintiff said that he did not want to get spinal injections because "I just didn't want [any] things put [in] my spine." (*Id.* at PageID 73.)

      The medical records confirm Plaintiff's testimony about why he was unable to undergo surgery, and also show possible reasons why he was noncompliant with blood pressure medications. Records from Plaintiff's March 2021 presurgical evaluation indicate that Plaintiff was sent to the emergency department because he presented "significantly elevated" blood pressure and complaints of pain. (AR, Doc. No. 7-7 at PageID 418.) The attending emergency room physician decided to admit him for further evaluation and treatment. (*Id.* at PageID 420.) Although Plaintiff left the hospital at that time against medical advice (*id.*), Plaintiff subsequently contacted his surgeon's office to reschedule the surgery. (*Id.* at PageID 417, 504.) Plaintiff's provider advised him on July 1, 2021 that he would need to see a cardiologist before his surgery could be rescheduled. (*Id.* at PageID 504.) Plaintiff followed this recommendation and presented for a preoperative cardiovascular risk assessment a few weeks later, on July 19, 2021. (*Id.* at PageID 530.) Stephanie Ruddy, D.O. reported that Plaintiff's blood pressure was again

12

"significantly elevated," and she prescribed Lisinopril. (*Id.*) When Plaintiff saw Dr. Ruddy in follow-up in August 2021, Plaintiff said he had been unable to pick up the medication from the pharmacy. (*Id.* at PageID 518.) Plaintiff told Dr. Ruddy: "[T]ransportation to the pharmacy is an issue." (*Id.*) Dr. Ruddy discussed transferring the prescription to a closer pharmacy, but Plaintiff said that he did not have an insurance card and closer pharmacies would not fill his prescriptions. (*Id.*) Plaintiff also said that trying to obtain Lisinopril off the "$4 list" would be cost-prohibitive. (*Id.*) But the ALJ did not consider any of these possible reasons for Plaintiff's non-compliance when he concluded that Plaintiff's reported symptoms were not fully consistent with the objective evidence.

Defendant asserts that the ALJ did, in fact, consider possible reasons why Plaintiff did not comply with treatment. (Mem. In. Opp., Doc. No. 12 at PageID 602.) According to Defendant, "the ALJ explicitly discussed [Plaintiff's] hearing testimony regarding reasons why he did not follow through with some of his treatment . . . and acknowledged Plaintiff's purported reasons for deferring his surgery multiple times." (*Id.*) This assertion is not well-taken. The ALJ did acknowledge some of Plaintiff's statements in the decision—but he merely cited the statements in his summary of Plaintiff's testimony: "[Plaintiff] testified that he was scheduled for surgery on his neck, but his blood pressure was too high. He said he has had to defer the surgery multiple times because of a lot of other problems going on in his life. He has struggled to get his blood pressure under control." (Decision, Doc. No. 7-2 at PageID 42-43.)

Contrary to Defendant's assertion, the ALJ did not consider Plaintiff's statements in his analysis of Plaintiff's subjective complaints. Although Plaintiff's testimony and the

13

medical records discussed above could provide a reasonable explanation for Plaintiff's limited treatment history, the ALJ did not consider them when he evaluated Plaintiff's subjective complaints and concluded that they were not "not fully consistent with the objective evidence." (Decision, Doc. No. 7-2 at PageID 45.) For example, the ALJ ignored these explanations when he found that Plaintiff failed to follow treatment recommendations because he has not undergone spinal surgery: "[Plaintiff] alleges serious problems with his cervical spine. However, despite being told he needed surgery, he has not gotten this. [Plaintiff] called in July 2021 to reschedule his surgery. Previously he left the hospital against medical advice." (*Id.*) Likewise, the ALJ ignored Plaintiff's explanations of transportation and financial difficulties when he concluded that Plaintiff was noncompliant with taking his blood pressure medications:

> In March 2021, doctors noted [Plaintiff] was supposed to be monitoring his blood pressure, but that he was not taking the prescribed medications. (Ex. 6F/3). In August 2021, [Plaintiff] reported that he had not picked up his blood pressure from the pharmacy. Doctors stressed the importance of picking up and taking his medication to improve blood pressure.

(*Id.*)

The ALJ also ignored Plaintiff's explanation that he did not feel comfortable undergoing invasive spinal injections: "As for his back pain, [Plaintiff] had been referred for injections, which he declined. (Ex. 5F/12). This demonstrates a possible unwillingness to do that which is necessary to improve his condition. It may also be an indication that [Plaintiff's] symptoms are not as severe as purported." (Decision, Doc. No. 7-2 at PageID 45.) *See Easterbrook v. Kijakazi*, 88 F.4th 502, 515-16 (4th Cir. 2023) ("a patient's refusal to pursue a specific type of medical treatment does not automatically

14

call into question the severity if her pain"); *Johny M. v. Saul*, 2020 U.S. Dist. LEXIS 123361, *14-15 (N.D. Ill. July 14, 2020) (ALJ erred when discounting plaintiff's treatment when he failed to explore why plaintiff was unwilling to pursue additional epidural injections yet was willing to undergo surgery and take serious pain medications to treat his pain).

For these reasons, the Court concludes that the ALJ did not comply with the applicable regulatory framework when he evaluated Plaintiff's symptom severity.

## VI. THE ALJ'S ERROR WAS NOT HARMLESS

The ALJ's error can only be excused as harmless if it does not prejudice the claimant on the merits or deprive him of substantial rights. *Rabbers*, 582 F.3d at 654. The Court finds that the ALJ's error was not harmless because it prejudiced Plaintiff on the merits. Therefore, reversal is warranted.

## VII. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

15

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the Plaintiff's subjective complaints and treatment history, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 8) be GRANTED;

2. The Court REVERSE the Commissioner's non-disability determination;

3. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).